UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANN SAULS, Administrator of the Estate of SETH PROCTOR, deceased, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY of LASALLE, a municipal corporation; LASALLE COUNTY SHERIFF's OFFICE, a political subdivision; THOMAS TEMPLETON; WELLPATH LLC f/k/a CORRECT CARE SOLUTIONS, LLC, a foreign limited liability company; LISA KELLY JONES, LCSW; DIANA GAPINSKI, RN; and HALEIGH EMM, RN, <br><br> Defendants. | Case No. 22-cv-00255 <br><br> Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ann Sauls, administrator of decedent Seth Proctor's estate, brings a three-count second amended complaint alleging violations of decedent's Fourteenth Amendment right to due process in relation to his suicide that occurred in the LaSalle County Jail while he was a pretrial detainee. See 42 U.S.C. § 1983. He brings these claims against the County of LaSalle, the LaSalle County Sheriff's Office, and Thomas Templeton, in his official capacity (collectively, the "county defendants") and against Wellpath LLC ("Wellpath"), Lisa Kelly Jones, LCSW, Diana Gapinski, RN, and Haleigh Emm, RN (collectively, the "medical defendants"). Before the Court today are two motions to dismiss: one from the medical defendants and another from the county defendants. For the following reasons, the Court grants the county defendants' motion to dismiss in its entirety and grants and denies in part the medical defendants' motion. The suit is dismissed as to the county defendants and as to defendants Gapinski and Emm; defendants' motion is denied as to defendants Wellpath and Jones.

**BACKGROUND**

1

For the purposes of assessing defendants' motions to dismiss, the following facts are accepted as true. On February 9, 2021, Ottawa, Illinois police arrested Proctor for driving under the influence, among other offenses, after Proctor struck a traffic control signal pole. That same day, Proctor was transported to the LaSalle County Jail, at which time LaSalle County Sheriff's Deputies conducted an initial screening. In his initial screening, Proctor explained to them that he had previously attempted suicide on five separate occasions, including a month before the February 9 incident. Based on his reported suicidality, unknown Sheriff Deputies decided to place Proctor in a padded safety cell until he could see a mental healthcare provider. Plaintiff alleges that at no time did these Sheriff's Deputies communicate Proctor's prior suicide attempts to other Sheriff's Deputies or jail healthcare providers. Nurse Diana Gapinski, who was on duty at the time of Proctor's booking, did not attempt to approach Proctor at the time. Gapinski instead left a note for the nurse replacing her that she did not see Proctor on the night of his booking.

The next day, February 10, 2021, a licensed clinical social worker, Lisa Kelly Jones, conducted Proctor's mental health screening. Kelly was employed by Wellpath, which was contracted by the County of LaSalle to provide medical and mental health care to detainees at LaSalle County Jail. Proctor told Jones that he did not remember telling officers during his intake that he was suicidal (because he was intoxicated), but that he was not surprised he had said so. After the mental health screening, Jones decided to move Proctor out of the padded safety cell and into a cell on the A-Block. The A-Block was used as an isolation block where individuals were detained in single-person cells due to Covid-19. Plaintiff alleges that Jones did not communicate Proctor's prior suicide attempts to LaSalle County Sheriff's Deputies or any other healthcare providers.

On February 11, Jones followed-up with Proctor and told him to push an intercom button to contact a Sherriff's Deputy if he began to have suicidal feelings. That same day, a nurse named Haleigh Emm interviewed Proctor to talk about his alcohol use. According to Plaintiff, Nurse Emm

2

never reported Proctor's past suicide attempts to LaSalle County Sheriff's Deputies or other healthcare providers. On February 12, a Sheriff's Deputy performed a cell check and found Proctor hanging from his bed sheet in his cell.

Based on these facts, plaintiff brings Fourteenth Amendment due process claims against Thomas Templeton, the Sheriff of LaSalle County and Chief Administrator of the LaSalle County Jail during the relevant time period (Count I), Wellpath, LLC, the limited liability company which has contracted with LaSalle County to provide medical and mental healthcare to detainees at the LaSalle County Jail (Count III), and against Wellpath employees Nurse Emm, Nurse Gapinski, and social worker Jones (Count II). These constitutional claims are based on defendants' failure to provide competent mental and medical healthcare and supervision while Proctor was detained at the LaSalle County Jail.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

**DISCUSSION**

Before turning to the individual counts, the Court assesses two general defects in the complaint the medical defendants purport to identify: first, that plaintiff failed to state a jurisdictional basis for her claim, and second that plaintiff has failed to join all necessary parties to the action.

As to the jurisdictional argument, defendant asserts that plaintiff has failed to state an applicable state law basis for her standing to bring a survival action under § 1983. "In a federal civil rights action where the person who has been deprived of his rights has died, the action survives for the benefit of the estate if the applicable state law creates such a survival action." *Spence v. Staras,* 507 F.2d 554, 557 (7th Cir. 1974). And indeed, Illinois law creates such a survival action. 755 ILCS 5/27-6. This inquiry ends here. Defendants fault plaintiff for failure to cite the survival statute in her complaint, noting that plaintiff cannot add additional facts after filing of the complaint. But of course, a statute is not a fact, and plaintiff's complaint lays out sufficient facts to establish her standing to sue on decedent's behalf.

Turning now to the joinder argument. Plaintiff is the administrator of Proctor's estate. Decedent's daughter, who also survives him, is not a party to the action. Defendants argue that because "it appears" that his daughter "would be one of the beneficiaries, if not the exclusive beneficiary" of any recovery, "total relief could not be afforded without her being named as a party" and therefore the action must be dismissed under Rule 19 for failure to join a required party.

Dismissal for failure to join a mandatory party is a two-part inquiry. *Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632, 635 (7th Cir. 2009). A court must first find that there exists a non-party that is required to join under Rule 19(a). Even then, the preferred remedy is to join the required party, not dismiss the suit. F.R.C.P. 19(a)(2). A court should dismiss a suit for failure to join only if joining the mandatory party would defeat jurisdiction in some way. *Askew*, 568 F.3d at 635.

4

Defendants cite no case law supporting the notion that multiple beneficiaries of a decedent's estate must be named as plaintiffs to an action brought in the name of an estate. Indeed, Proctor's daughter, as a potential beneficiary of any award, has no *distinct* legal interest from plaintiff's. Furthermore, even if Proctor's daughter were a required party, defendants have not explained why this court should dismiss the action rather than simply join Proctor's daughter as a party. Their failure to join argument thus fails.

I. Count I

Count I alleges *Monell* liability against Sheriff Templeton in his official capacity. A threshold matter for any *Monell* claim is whether the plaintiff has established a constitutional violation by a municipal employee in the first instance. Because there is no underlying constitutional violation by a municipal employee, the municipality cannot be liable.

Plaintiff alleges that the Sheriff's Office violated his Fourteenth Amendment rights by providing inadequate medical care. Medical care for pretrial detainees is governed by an "objective reasonableness" standard. *Pulera v. Sarzant*, 966 F.3d 540, 549-550 (7th Cir. 2020). In cases like this where a jail is staffed by medical and non-medical staff, non-medical staff are not liable where "the treatment decision is a direct response to the issue referred to the medical staff." *Eichelkraut v. Jungles*, No. 21 C 02528, at *4 (N.D. Ill. Jan. 22, 2022) (Durkin, J.). Here, at Proctor's initial intake, Sheriff's Deputies placed him in a specialized padded spell after he told them of his prior suicide attempt. He was observed while in that cell. It was only after defendant Jones made the decision to remove Proctor from that padded cell that Proctor killed himself. To the extend Proctor's level of supervision and medical care was inadequate after his removal from the padded cell into the A-Block, this was done at the direction of Jones, Proctor's medical provider. The allegation that the Sheriff's Deputies that performed Proctor's initial intake failed to inform any other Deputies about Proctor's past suicide attempts is also unpersuasive. There is no causal connection to Proctor's

injury because those same Deputies placed Proctor, who was later medically examined, in a padded cell. *See Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1182 (7th Cir. 1985) ("[T]he plaintiff in a section 1983 action must prove a causal connection between his injury and the defendant's unconstitutional conduct."). Proctor's later medical examination breaks the causal link between his initial intake, which by all indications appears to have proceeded without issue, and his unfortunate death. Count I is thus dismissed.

II. Count II

Count II alleges that that defendants Gapinski, Emm, and Jones provided inadequate medical care in violation of Proctor's Fourteenth Amendment Rights. The legal analysis for such claims is analogous to claims of deliberate indifference under the Eighth Amendment. *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). To state a claim, a plaintiff must allege that "(1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the decedents medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to decedent's medical need; and (4) the defendant acts purposefully, knowingly, or recklessly with respect to the risk of harm." *Gonzalez v. McHenry Cnty.*, Ill 40 F. 4th 824, 82-28 (7th Cir. 2022) (citing *Miranda v. County of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018)). As with Eighth Amendment claims, there is objective component that asks if the detainee has a serious medical risk and a subjective component that asks if the defendant knew and intentionally disregarded that risk. *Minix*, 597 F.3d at 831. The objective component is met in all cases here because "it goes without saying that suicide is a serious harm." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). Thus, the court turns to assess whether each individual defendant displayed the required subjective culpability.

*A. Gapinski*

Plaintiff alleges that Nurse Gapinski failed to provide Proctor with any medical care when she knew that he was suicidal and that alcohol withdrawal would increase suicidal ideation. While

6

the court wonders whether her alleged failure to act could constitute the objectively unreasonable conduct needed to establish a Fourteenth Amendment violation, the claim against Nurse Gapinski fails because there is no causal connection between her actions (or rather, lack of action) and Proctor's eventual suicide. *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1182 (7th Cir. 1985) ("[T]he plaintiff in a section 1983 action must prove a causal connection between his injury and the defendant's unconstitutional conduct."). Gapinski was on duty the night of Proctor's intake, three days before his death. While Plaintiff faults her for failing to screen Proctor, he was eventually screened the following day. It is unclear what Gapinski could have done to prevent Proctor's eventual move to the A-Block, a decision in which she did not participate, let alone his suicide. Count I is thus dismissed as to Defendant Gapinski.

    *B. Jones*

Plaintiff alleges three unconstitutional acts by Jones: moving him from a padded safety cell to general population housing despite knowing he was at risk of suicide; failure to properly monitor him; and failure to inform the Sheriff's deputies monitoring Proctor of his risk of suicide. Jones' decision to move Proctor from a padded safety cell despite having heard firsthand about his suicidal ideation is sufficient to allow the claim against her to survive a motion to dismiss. Defendants seem to contest plaintiff's factual allegations, arguing that Jones was not a LaSalle County deputy and did not have the authority to move Proctor. But at this stage of litigation, the court must accept as true all of Plaintiff's well-pled allegations, and is it at the very least, plausible, that Jones had the authority to, and indeed did, move Proctor out of his safety cell, given her employment with Wellpath and Wellpath's contract with the LaSalle County jail. Given the plausibility of that allegation, it is possible to make a reasonable inference that Jones was objectively unreasonable in moving a detainee she knew to be at risk of suicide out of a cell designed precisely to address that risk.

    *C. Emm*

Plaintiff's allegation against Emm is that she saw Proctor to discuss his alcohol abuse but never recorded or communicated information regarding his suicide risk or alcohol abuse to others. However, from the face of the complaint, it appears as if Emm's visitation with Proctor was limited to his alcohol use. Plaintiff does not allege that she was even aware of his past suicide attempts or present risk of suicide. A defendant cannot disregard a risk of which she is unaware. Count II is thus dismissed as to Defendant Emm.

III.     Count III

An entity can face *Monell* liability when: (1) it has "an express policy that causes a constitutional deprivation when enforced;" (2) it has "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice;" or (3) "a person with final policymaking authority" is responsible for the constitutional injury. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). Here, plaintiff seeks to establish the second category of *Monell* liability: custom or practice. In support of her allegation, Plaintiff identifies (1) three prior examples of suicides at the LaSalle County Jail, which occurred between 1999 and 2016; (2) a news article in which CNN reported on Wellpath's systematic, nationwide failure to "spot and treat serious psychiatric disorders"; (3) a 2018 Department of Justice report that found that a Virginia jail, for whom healthcare services were provided by Wellpath, failed to provide adequate mental healthcare; and (4) 200 lawsuits against Wellpath alleging inadequate medical care between 2014 and 2018.

It is true, as Defendants note, that the three prior suicides are isolated, and that the complaint lacks factual details regarding the circumstances of those suicides. It is also true that that the exact connection between the allegations here and the cited CNN article's contention that Wellpath failed to "spot and treat serious psychiatric disorders" is unclear. On their own, neither of these would alone support a finding that Wellpath had a widespread practice of ignoring suicidal ideation. However, taken together, Plaintiff's factual allegations do support the reasonable inference

8

that Wellpath has a "custom or practice" of failing to adequately treat patients at risk of suicide. Indeed, district courts, when assessing prison healthcare cases, must be aware of "the doctrinal burdens of *Monell*" that may necessitate "discovery concerning the healthcare provided to others." *Howell v. Wexford Health Sources, Inc.,* 987 F.3d 647, 656 (7th Cir. 2021). Thus, Count III remains for the time being.

**CONCLUSION**

For the reasons stated above, the county defendants' motion to dismiss [69] is granted in full and the medical defendants' motion to dismiss [63] is granted in part. Count I is dismissed with prejudice. Count II is dismissed with prejudice as to defendants Gapinski and Emm. Count II remains as to defendant Jones. Count III remains in its entirety.

IT IS SO ORDERED.

Date: 7/31/2023

Entered:_____
SHARON JOHNSON COLEMAN
United States District Judge

9